IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FREDERIC DEON WASHINGTON,          )
          Plaintiff,                 )
                                     )
       v.                            )          Civil Action No. 3:24cv403 (RCY)
                                     )
VIRGINIA UNION UNIVERSITY, *et al.*,  )
          Defendants.                )
_____     )

## MEMORANDUM OPINION

Plaintiff Frederic Deon Washington, appearing *pro se*, filed this negligence action against Defendant Virginia Union University ("VUU" or "Defendant") based on incidents and experiences related to his prior employment with VUU. The case is presently before the Court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Court finds that Plaintiff fails to state a claim upon which the Court can grant legal relief. As such, the Court must dismiss Plaintiff's Complaint.

## I. BACKGROUND

### A. Factual Allegations[1]

In 2021, Plaintiff interviewed with and was hired by Defendant for the position of "Assistant Professor of Teacher Education," which was a role within the Evelyn Reid Syphax School of Education (ERSSE) at VUU. Compl. ¶¶ 6–8. Prior to his official start date with

---

[1] When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting unreasonable inferences or the plaintiff's legal conclusions. *Id.* Applying these standards, the Court construes the facts in the Complaint as follows.

Defendant, Plaintiff was informed of various tasks awaiting him, including the completion of various reports due to outside agencies. *Id.* ¶¶ 9–10. Once his employment formally started, Plaintiff was also tasked with completing "all retention and academic progress presentations for the [interim] dean of the school of education," Dr. Michelle McQueen-Williams. *Id.* ¶ 14. Plaintiff was further expected to compile reports and presentations "in addition to satisfying other instructional, advising, and professional development tasks" related more specifically to his role as an Assistant Professor. *Id.* ¶¶ 16–17.

Within a month of beginning his employment, Plaintiff—"us[ing] the chain of command"—raised his concerns about his workload and the tasks he felt were more "the responsibilities of both the Dean and the Department Chair." *Id.* ¶ 23. Dr. McQueen-Williams informed Plaintiff in response that, as dean, she "had latitude in determining what faculty members did and did not do," and that "if all [plaintiff] thought he was going to do was teach, advise, and research/publish, then [P]laintiff needed to resign." *Id.* ¶¶ 24–25. Feeling that no resolution had been reached, Plaintiff escalated his concerns to the Senior Vice President and Provost for Academic Affairs, Dr. Terrell L. Strayhorn. *Id.* ¶ 26. Although Dr. Strayhorn was initially sympathetic, at a later meeting between Plaintiff, Dr. Strayhorn, and Dr. McQueen-Williams, Dr. Strayhorn took Dr. McQueen-Williams's side and told Plaintiff he needed to be a "team player." *Id.* ¶¶ 27–30. Dr. Strayhorn further expressed that he would like Plaintiff to work on research initiatives with him. *Id.* ¶ 31. Plaintiff, feeling financial pressure as well as the pressures of family and friends' expectations, "felt compelled to oblige" Dr. Strayhorn and Dr. McQueen-Williams. *Id.* To that end, Plaintiff completed the additional tasks asked of him. *Id.* ¶ 33.

Plaintiff also followed up with Dr. Strayhorn about research initiatives. *Id.* At one of those later meetings, in November of 2021, Dr. Strayhorn made sexual advances towards Plaintiff and

briefly performed oral sex on Plaintiff, before Plaintiff rebuffed him. *Id.* ¶¶ 38–40. Plaintiff only told his mother, a friend employed at Louisiana State University (Shreveport), and Dr. Alphonso Sealy, who he contacted via LinkedIn, about the incident. *Id.* ¶¶ 42–43. He did not report the assault to law enforcement to or anyone employed at VUU. *Cf. id.* ¶¶ 42–46. Plaintiff did not have another one-on-one encounter with Dr. Strayhorn. *Id.* ¶ 41.

By the fall of 2022, despite various resignations, VUU had suspended the search for additional faculty members. *Id.* ¶ 49. As a result, Plaintiff found himself picking up slack and "continu[ing] the task of multiple faculty members." *Id.* During this same timeframe, VUU hired various "senior level cabinet members," an action which Plaintiff found to be frivolous. *Id.*

In October of 2022, VUU appointed a new Dean for the ERSSE, Dr. Charletta Barringer-Brown. *Id.* ¶ 51. Dr. Barringer-Brown was "dismayed" to find that employees such as Plaintiff and administrative assistant Ariana Burnett were performing the work of Dr. McQueen-Williams. *Id.* ¶¶ 51–53. Dr. Barringer-Brown resigned sometime over winter break, however; Plaintiff discovered this upon his return in January of 2023, *id.* ¶ 58, upon which discovery Plaintiff experienced a panic attack that his prior extra work demands would return, *id.* ¶ 59. Plaintiff shared with senior administrators at VUU that he opposed the reappointment of Dr. McQueen-Williams as interim dean following Dr. Barringer-Brown's departure, but she was subsequently reappointed to that role. *Id.* ¶¶ 60–61. Plaintiff offered his immediate resignation effective Friday, January 6, 2023. *Id.* ¶ 61.

Upon hearing of his intended resignation, the outgoing Dean, Dr. Barringer-Brown, wrote to VUU's provost in support of Plaintiff and acknowledging that Plaintiff had been performing work that was properly his supervisor's. *Id.* ¶ 62. Plaintiff also received various calls and emails asking him to reconsider his resignation, including one from Dr. Mignon Jacobs, the provost. *Id.*

3

¶¶ 63–64.  Following that conversation, Plaintiff sent Dr. Jacobs a text on Monday, January 9, 2023, advising that he would return based on the condition that he receive retroactive pay for his work overloads and the tasks he had completed that were properly the responsibility of the dean and department chair.  *Id.* ¶ 65.  Plaintiff further noted that "a condition of his going forward would be that he" be appropriately compensated for his work and that he not be required to perform the work of others, e.g., the dean's reports, for which they were being compensated.  *Id.*  Dr. Jacobs responded with, "Ok.  Plan to return."  *Id*. ¶ 66.  Plaintiff accordingly rescinded his resignation based on Dr. Jacobs's agreement to the "terms" of Plaintiff's return.  *Id.*  Plaintiff returned to work that same Monday, resulting in no missed work.  *Id.* ¶ 61.

Following his return to work, Plaintiff heard nothing from Dr. Jacobs; he scheduled a meeting with Dr. Jacobs and the associate provost, Dr. Henriette Scott, for March 14, 2023.  *Id.* ¶ 67.  Plaintiff cancelled this meeting due to a panic attack, however.  *Id.*  The meeting was not rescheduled.  *Id*.  Plaintiff's workload, work requests, and working conditions returned to their previous levels, e.g., he continued to prepare reports for Drs. McQueen-Williams and Delbridge and he resumed teaching overloads.  *Id*. ¶ 68.  In response, Plaintiff de-prioritized the work for which he was not paid, but he received pushback about this from Drs. McQueen-Williams and Delbridge.  *Id.* ¶ 69.  Plaintiff also experienced an illness during this timeframe.  *Id.* ¶ 70.

In March of 2023, Plaintiff learned that Dr. Strayhorn was still associated with VUU.  *Id*. ¶ 71.  Plaintiff thereafter decided to resign, effective at the end of the spring semester, because "no one appeared to understand the severity of the work climate [P]laintiff had been subjected to, and no one attempted to make it right."  *Id*.  Plaintiff "resign[ed] definitively on May 6, 2023."  *Id*. ¶ 72.

Following his resignation, Plaintiff engaged with VUU regarding the return of his keys and badge, his lack of payment for Title III grant work, and the retrieval of various personal office belongings. *Id.* ¶ 72. Plaintiff learned in August of 2023 that the hold-up with respect to receiving the Title III grant money he was owed was the signature of Dr. McQueen-Williams. *Id.* ¶ 77. In September of 2023, Plaintiff emailed the president of VUU, seeking resolution of the Title III hold-up. *Id.* ¶ 84. This was the first time Plaintiff reported his assault by Dr. Strayhorn to any VUU employee. *Id.* ¶ 85. The president redirected Plaintiff to VUU's provost and Title III administrator. *Id.* Plaintiff ultimately collected a check from VUU in late September of 2023, but the check did not include full payment; rather, it omitted a $1,700 allotment for Spring 2023, despite Plaintiff's Title III work during that semester. *Id.* ¶¶ 90–92, 96–100. Given Plaintiff's tight financial circumstances by that point, he cashed the check, despite its deficiencies. *Id.* ¶ 92.

Plaintiff submitted a "complaint" to VUU's President, Dr. Hakim Lucas, on January 26, 2024, claiming "violation[s] of [his] civil and employment rights" and seeking (1) retroactive pay for the work beyond his official job description, (2) compensation for damages, including pain and suffering, (3) reimbursement, (4) retrieval of various personal belongings, and (5) a fair letter of recommendation from a senior administrator at VUU. *Id.* ¶ 101; *see also* Compl. Ex. A-25, ECF No. 3-25 (January 26, 2024 letter to VUU's President, titled "RE: Uncompensated Work and Expenses, Personal Item Retrieval, and Letter of Recommendation"). Dr. Lucas forwarded the complaint to VUU's General Counsel, who informed Plaintiff that VUU would follow up with Plaintiff after an investigation into Plaintiff's allegations. Compl. ¶ 102. VUU subsequently shipped Plaintiff his diplomas, which were among the personal items that Plaintiff sought retrieval of, and in March of 2024, VUU's General Counsel emailed Plaintiff to inform him that the claims in Plaintiff's complaint could not be substantiated. *Id.* ¶ 104. Plaintiff sought to provide VUU

with supporting evidence of his claims. *Id.* ¶ 105. VUU's General Counsel confirmed receipt of the additional materials and informed Plaintiff that he would review them, *id.* ¶ 106; Plaintiff heard nothing further from VUU, despite informing them that he would next pursue legal action, *id.* ¶¶ 107–108.

On April 11, 2024, Plaintiff received a cease-and-desist letter from attorneys representing Dr. Strayhorn, claiming that Plaintiff's allegations against Dr. Strayhorn were defamatory and threatening legal action if Plaintiff did not comply. *Id.* ¶ 109. Plaintiff was not deterred from seeking legal action, but his financial situation prevented him from hiring an attorney. *Id.* ¶¶ 110–111. Plaintiff subsequently experienced depression and paranoia, ultimately resulting in a psychosis event and a four-night psychiatric hospitalization in late April of 2024. *Id.* ¶¶ 116–135.[2]

## B. Relevant Procedural History

On May 31, 2024, Plaintiff submitted his proposed complaint, along with an application to proceed *in forma pauperis* ("IFP Application"). ECF No. 1. The Court granted the IFP Application but, on review of the allegations in Plaintiff's Complaint, dismissed various named defendants from the action who did not appear in Plaintiff's actual statement of claims. ECF No. 2. The Court allowed the Complaint to proceed as to Defendant VUU, however, and accordingly directed that Plaintiff's Complaint be docketed and served. *Id.*

On August 2, 2024, Defendant VUU timely appeared and filed the instant Motion to Dismiss for Failure to State a Claim, properly accompanied by a notice of Plaintiff's obligation to respond pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), ECF No. 8, and a

---

[2] Plaintiff introduces additional facts (and arguably claims) in his Response in Opposition to the Motion to Dismiss. However, to the extent Plaintiff attempts to amend his Complaint, he is barred from doing so via briefing. *Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Memorandum in Support of the Motion to Dismiss, ECF No. 9. In response, Plaintiff filed a Motion to Proceed with Complaint, ECF No. 11, which the Court directed all parties to construe as Plaintiff's Response in Opposition, *see* Order, ECF No. 12. Defendant filed its Reply on September 3, 2024, rendering the Motion to Dismiss ripe.[3]

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added) (citing *Twombly*, 550 U.S. at 556). Notably here, a *pro se* complaint is "to be liberally construed" and, "however

---

[3] Plaintiff has subsequently filed a Motion for Pre-trial Summary Judgment, ECF No. 14, and a Motion to Enter Exhibits in Ongoing Civil Case, ECF No. 20. Because the Court finds that Plaintiff has failed to state a claim upon which relief may be granted and thus grants the Motion to Dismiss, the Court does not reach those pending motions, other than to deny them as moot.

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023). "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Iqbal*, 556 U.S. 662, 678.

## III. ANALYSIS

Plaintiff sets out eight counts in the Complaint, all of which charge Defendant with "[n]egligence[4] in ensuring duty of care, good faith, and loyalty" to "the organizational scope and/or mission" of VUU as, generally, "a[n] IRS/Federally Tax-Exempt Organization also receiving Federal Title III[5] and Title IV[6] funding." Compl. 2–3 ("Nature of Action," listing Counts 1–8). Defendant argues that Plaintiff's claims fail to state a cognizable legal claim. Mem. Supp. Mot. Dismiss 1, ECF No. 9. Defendant specifically notes that, despite Plaintiff couching all

---

[4] The Court notes that it has jurisdiction over Plaintiff's negligence claims, which arise from state law, based on 28 U.S.C. § 1332, diversity of citizenship, as Plaintiff is not domiciled in Virginia, *see* Compl. 5, while Defendant VUU is a private institution founded and based in Virginia, *see* Fin. Discl. Stmt., ECF No. 10. This notwithstanding Plaintiff's statement of jurisdiction, which cites 28 U.S.C. § 1331. Compl. 5.

[5] Referring to Title III, Part A, Sec. 311-315 of the Higher Education Act (HEA) of 1965, as amended, codified at 20 U.S.C. § 1057–1059b.

[6] Referring to Title IV, Part A, Section 4101 of the Elementary and Secondary Education Act of 1965 (ESEA), as amended by the Every Student Succeeds Act (ESSA), codified at 20 U.S.C. § 7111.

his claims in terms of negligence, Plaintiff fails to identify any relevant duty of care owed him by Defendant. *Id.* at 2. In his Response in Opposition, Plaintiff attempted to rebut with fourteen "response arguments," but in that brief he fails to address Defendant's primary argument for dismissal by identifying any cognizable duty VUU owed to him. Thus, as more specifically set out below, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted. As such, the Court will grant the Motion to Dismiss.

## A.  Plaintiff Fails to Identify Any Duty of Care

To state a claim for common law negligence in Virginia,[7] a plaintiff has "the burden to show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2002). Honing the inquiry further, the Virginia Supreme Court has made clear that "the threshold question in [a negligence] case is whether a duty of care existed on the part of the[] defendants to the[] plaintiffs." *Fox v. Custis*, 372 S.E.2d 373, 375 (Va. 1988); *see also Yuzefovsky v. St. John's Wood Apts.*, 540 S.E.2d 134, 139 (Va. 2001) ("[T]he factual allegations must establish the existence of a duty of care."). Importantly, the underlying duty must be sourced from common law—it cannot be a duty solely existing by virtue of some contract. *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255 (Va. 2019). So, for Plaintiff to state a claim for negligence, his allegations must establish, at a minimum, the existence of a common law-rooted duty of care on the part of Defendants with respect to any of the following actions:

Count One:    "compensating [P]laintiff timely, in-full, and as promised" for work performed;

Count Two:    paying Plaintiff certain Title III funds;

---

[7] Because this federal action is based upon diversity of citizenship, the forum state's law—here, Virginia—controls. *Limbach Co. LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005).

Count Three:    "adhering to satisfactory audits;"

Count Four:    updating the Faculty Handbook;

Counts Four & Five:  having controls in place with respect to the appointment of an interim dean;

Count Six:    having controls to detect fraud, plagiarism, and incompetence;

Count Seven:  having effective controls during the screening and hiring of Dr. Lucas and Dr. Strayhorn; and

Count Eight:  employing an attorney who did not conduct an investigation satisfactory to Plaintiff and who "exhibited a clear lack of cooperation."

*See* Compl. 2–5.

Count One, regarding Defendant's failure to compensate Plaintiff for the work performed during his employment, clearly rests on a duty established by contract, not common law.  Thus, this Count fails to state a claim for negligence as a matter of law.  *See Tingler*, 834 S.E.2d at 255 ("[T]he mere fact that a plaintiff has sought recovery for pain and suffering does not, standing alone, convert a contract claim into an action in tort." (quoting *Glisson v. Loxley*, 366 S.E.2d 68, 72 (1988))).

As to Count Two, Plaintiff appears to attempt to incorporate obligations owed pursuant to Title III grant terms into some duty purportedly owed to him, separate and apart from the terms of his employment contract.  This again fails, because the Court finds nothing to suggest that a violation of such grant procedures constitutes actionable negligence *per se*.  *See, e.g.*, *Hellebuyck v. Gucci Am.*, 2020 U.S. Dist. LEXIS 254243, at *7–12  (E.D. Va. July 9, 2020) ("[A] violation of any statute does not establish negligence *per se* in all circumstances;" rather, a plaintiff must still establish some pre-existing duty that the statute then modifies to a *per se* standard.).

Count Three similarly fails, because there is nothing before the Court to suggest that an institution has a duty *to its employees* to properly audit according to applicable accreditation

10

standards.  In other words, Plaintiff is not the proper party to seek to enforce accreditation standards and their underpinning requirements.

With respect to the first aspect of Count Four, Plaintiff identifies no common law duty VUU owed him with respect to updating its Faculty Handbook, and so he has failed to state a negligence claim therein, as well.

Counts Four, Five, and Seven come the closest to articulating an actionable claim for negligence, by way of negligent hiring and retention, but these Counts are nevertheless deficiently pleaded.  In Virginia, an employer is liable for negligent hiring where the employer hires "an improper person in work involving an unreasonable risk of harm to others" and fails "to exercise reasonable care in placing [that] individual with known propensities, or propensities that should have been discovered by reasonable investigation, in an employment position in which . . . it should have been foreseeable that the hired individual posed a threat of injury to others."  *A.H. v. Church of God in Christ, Inc*., 831 S.E.2d 460, 473 (Va. 2019).  The Court agrees with Defendant that Plaintiff's allegations fail to suggest that Defendant knew of or should have reasonably discovered any propensities that rendered any of Dr. McQueen-Williams, Dr. Lucas, or Dr. Strayhorn "an unreasonable risk of harm to others" at the time of their hiring, or otherwise that it should have been foreseeable that their hiring into their respective positions "posed a threat of injury to others." *Id.*  Although the allegations are certainly detailed with respect to Plaintiff's interactions with the above-named individuals, and Plaintiff certainly describes the harm and suffering he experienced as a result of his employment alongside these individuals, that does not satisfy the elements of a negligent hiring claim as set forth above.

Similarly, Plaintiff fails to state a claim for negligent retention on any of these Counts, as such a claim exists "for harm resulting from the employer's negligence in retaining a dangerous

11

employee who the employer knew or should have known was dangerous and likely to harm [others]." *Id.* at 474 (quoting *S.E. Apts. Mgmt., Inc. v. Jackman*, 513 S.E.2d 395, 397 (Va. 1999)). Nothing in Plaintiff's Complaint suggests that he notified anyone at VUU of any danger created by the employees he now claims could have been kept out by proper "controls," and on that basis alone, he fails to state a claim.

Count Six fails to state a claim for negligence because Plaintiff identifies no source of a duty whereby Defendant had an obligation to Plaintiff to prevent fraud, plagiarism, and incompetence. While the Court can certainly agree that it is preferable to keep any such tendencies out of academia, neither that laudable goal nor anything about Defendant's specific institutional nature "as a recipient of Federal Title IV funds," *see* Compl. 3, creates a special relationship to Plaintiff such that Defendant owed Plaintiff a duty to detect and prevent fraud, plagiarism, and incompetence. *See Curran v. Axon Enter., Inc.*, 57 F.4th 190, 195 (4th Cir. 2023) ("Generally, under Virginia law, a person has no duty to protect another from the conduct of third persons. But if a special relationship exists between the defendant and the plaintiff, the defendant must use reasonable care to protect the plaintiff against such third-party conduct." (citing *Burdette v. Marks*, 421 S.E.2d 419, 420 (Va. 1992))).

Finally, Count Eight fails, like the rest, because Plaintiff does not identify any source for Defendant's purported duty to employ an attorney who would investigate and otherwise "cooperate" in a manner satisfactory to Plaintiff. Defendant is the proper party to seek redress from its employed counsel, should it determine that counsel did not comply with the terms of his own employment obligations in investigating Plaintiff's claims. As stated before, the mere fact that Plaintiff now claims personal injury as a result of counsel's actions (or inactions) cannot in

and of itself give rise to some duty owed to Plaintiff, external to that counsel's own employment contract with Defendant. *Tingler*, 834 S.E.2d at 255.

As a result of the foregoing, Plaintiff has failed to state any claim for negligence upon which relief may be granted, and so the Court will grant the Motion to Dismiss as to all Counts.

## B.  No Leave to Amend

Plaintiff does not request leave to amend, and so—despite Plaintiff's apparent effort to constructively amend his Complaint by way of the new facts asserted in his Response in Opposition—the Court declines to *sua sponte* grant leave to amend. *King v. Rubenstein*, 825 F.3d 206, 225 (4th Cir. 2016) (noting that dismissal without prejudice is appropriate where the *pro se* plaintiff does not seek leave to amend).  Given the timeframe during which the alleged events took place, any claims Plaintiff attempts to re-cast as employment discrimination or harassment, as suggested by his Response brief, would likely be untenable for failure to timely exhaust his administrative remedies. *See Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 811 (E.D. Va. 2003) ("In . . . Virginia, [an] [EEOC] charge must be filed no later than 300 days 'after the unlawful practice occurred.'").  That said, the Court does not engage with Plaintiff's supplemental facts at present and so does not definitively pass on the issue.  It is simply a factor that further weighs against granting leave to amend.

With respect to the Counts presently dismissed, the Court will dismiss Counts One through Six, Count Eight, and that portion of Count Seven applicable to the hiring of Dr. Lucas with prejudice, because the Court does not find that any applicable common law duties exist, such that Plaintiff could amend and properly re-state these negligence claims, and/or—with respect to the negligent hiring and retention claims stated against Dr. McQueen-Williams and Dr. Lucas— amendment would be futile because these employees' actions, even at their worst, were not

"dangerous" or of a nature that posed a risk of injury to others such that Plaintiff could properly bolster a claim for negligent hiring and/or retention.

As to the remainder of Count Seven, however, the Court will only dismiss this claim without prejudice, finding that it is not impossible for Plaintiff to plead facts to support a claim for negligent hiring with respect to Dr. Strayhorn.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Defendant's Motion to Dismiss.

An appropriate Order will issue.

_____ /s/
Roderick C. Young
United States District Judge

Date: <u>March 24, 2025</u>
Richmond, Virginia

14